UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Jennifer L.,[1]<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Kilolo Kijakazi,<br>*Acting Commissioner of Social Security*,<br><br>　　　　　Defendant. | Case No. 22-cv-3018 (JRT/DJF)<br><br><br>REPORT AND<br>RECOMMENDATION |

　　　　Pursuant to 42 U.S.C. § 405(g), Plaintiff Jennifer L. ("Plaintiff") seeks judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Decision").  This matter is before the Court on Plaintiff's motion for summary judgment (ECF No. 13).[2]  The undersigned considers the motion pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1.  For the reasons given below, the Court recommends that Plaintiff's motion for summary judgment be denied and the Commissioner's Decision be affirmed.

---

　　　[1]  This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in orders in Social Security matters.

　　　[2]  The new Supplemental Rules for Social Security Actions under 42 U.S.C. 405(g) no longer require parties to file cross-motions for summary judgment, but instead require the filing of a "brief for the requested relief." Supplemental Rule 6.  This action was filed one day after the new Rules took effect.  Defendant filed such a brief (ECF No. 19), but Plaintiff filed a motion for summary judgment (ECF No. 17).

# BACKGROUND

## I. Plaintiff's Claims

Plaintiff applied for DIB and SSI on October 6, 2020. (Soc. Sec. Admin. R. (hereinafter "R.") 285-301.)[3] At that time she was a 44-year-old woman with a General Educational Development ("GED") certificate who had previously worked as an assistant manager, store clerk, and cutting counter employee of various retail employers. (R. 45, 321, 327.) Plaintiff initially alleged she became disabled on October 3, 2017 (R. 285), but later amended her disability onset date to April 1, 2019 (R. 44). Plaintiff based her claims on a variety of physical and mental health conditions, including: type 2 diabetes; peripheral neuropathy; severe right ulnar neuropathy; chemical dependence; post-traumatic stress disorder ("PTSD"); major persistent depression disorder; "problems in the right arm"; and hypertriglyceridemia. (R. 320.)

## II. Regulatory Background

An individual is considered disabled for purposes of Social Security disability benefits if she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, an individual is disabled "only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 1382c(a)(3)(B). "[A] physical or mental impairment is an impairment that results from anatomical, physiological, or

---

[3] The Social Security administrative record (R.) is filed at ECF No. 15. For convenience and ease of use, the Court cites to the record's pagination rather than the Court's ECF and page numbers.

psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 1382c(a)(3)(D).

The Commissioner has established a sequential, five-step evaluation process to determine whether an individual is disabled. 20 C.F.R. § 416.920(a)(4). At step one, the claimant must establish that she is not engaged in any "substantial gainful activity." *Id.* § 416.920(a)(4)(i). The claimant must then establish that she has a severe, medically determinable impairment or combination of impairments at step two. *Id.* § 416.920(a)(4)(ii). At step three, the Commissioner must find that the claimant is disabled if the claimant has satisfied the first two steps and the claimant's impairment meets or is medically equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App'x 1 ("Listing of Impairments" or "Listing"). *Id.* § 416.920(a)(4)(iii).[4] If the claimant's impairment does not meet or is not medically equal to one of the impairments in the Listing, the evaluation proceeds to step four. The claimant then bears the burden of establishing her residual functional capacity ("RFC") and proving she cannot perform any past relevant work. *Id.* § 416.920(a)(4)(iv); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). If the claimant proves she is unable to perform any past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work existing in a significant number of jobs in the national economy. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant can perform such work, the Commissioner will find the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

### III.    Procedural History

The Commissioner denied Plaintiff's applications for DIB and SSI initially (R. 117, 118)

---

[4] The Listing of Impairments is a catalog of presumptively disabling impairments categorized by the relevant "body system" affected. *See* 20 C.F.R Part 404, Subpart P, App. 1.

3

and on reconsideration (R. 121, 122). On September 28, 2021, at Plaintiff's request (R. 212), an Administrative Law Judge ("ALJ") held a hearing on Plaintiff's application. Plaintiff, who was represented by an attorney, and a vocational expert ("VE") testified at the hearing. (R. 38-66.) The ALJ issued his Decision on December 1, 2021. (R. 16-32.) The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. (R. 20.) He then found she had the following, medically determinable severe impairments: degenerative disc disease; diabetes mellitus; obesity; peripheral neuropathy; bilateral ulnar neuropathy; degenerative joint disease of the right shoulder; anxiety; depression; and PTSD. (R. 21.) The ALJ further determined that Plaintiff had the following non-severe impairments: left knee pain; restless leg syndrome; and right hip pain, likely due to osteoarthritis. (R. 21.) Finally, the ALJ observed that December 2020 progress notes in Plaintiff's record indicated she had attention deficit hyperactivity disorder ("ADHD"). (R. 21.) But the ALJ also observed that subsequent progress notes did not reflect any diagnosis of ADHD, and concluded ADHD was not a medically determinable impairment. (R. 21.)

Having identified and assessed Plaintiff's impairments, the ALJ found Plaintiff's impairments did not meet or medically equal any impairment in the Listing. (R. 21-24.) After thoroughly cataloging the mental and physical health evidence in the record, he then determined that:

> [Plaintiff] has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can occasionally balance on narrow, slippery, or erratically moving surfaces; can occasionally stoop, kneel, crouch, and crawl; can frequently, but not constantly, push and/or pull with the right dominant upper extremity, including the use of hand controls; can occasionally reach overhead with the right dominant upper extremity; can frequently, but not constantly, reach in all other directions with the right dominant upper extremity; can frequently, but not constantly, handle, finger, and feel with the right dominant upper extremity; can have only occasional exposure to wetness; can have no exposure to vibration, such

as vibratory tools or machinery; can have no exposure to hazards, such as unprotected heights or dangerous, moving machinery; is limited to simple and routine tasks performed in a work environment free of fast-paced production requirements (i.e. no work on an assembly line); is limited to low stress work, which is defined as involving only simple, work-related decisions and routine work place changes; is limited to occasional interaction with co-workers and supervisors; is limited to no transactional interaction with the public, i.e. sales, negotiation, customer service, or resolution of disputes; the work itself should deal with things rather than people throughout a typical workday; and there should be no tandem tasks or teamwork required.

(R. 24.)

Next, the ALJ classified Plaintiff's past relevant work as a composite job combining the functions of a "Management Trainee (representative DOT #189.167-018; light, per the DOT; heavy, as performed; skilled; SVP 6)" and a "Stock Clerk (representative DOT #299.367-014; heavy; semi-skilled; SVP 4)." (R. 30.) The ALJ determined that since Plaintiff's RFC limited her to a range of light, unskilled work—and her past, relevant work was performed at the semi-skilled to skilled level—she is unable to perform past relevant work. (R. 30.) The ALJ then evaluated whether Plaintiff is capable of performing other jobs that exist in significant numbers in the national economy. (R. 31-32.) Based on the testimony of the VE, and considering Plaintiff's age, education, work experience and RFC, the ALJ determined Plaintiff is capable of performing such other jobs. The ALJ concluded on that basis that Plaintiff is not disabled. (R. 32.)

## DISCUSSION

### I. Standard of Review

The Court's review of the Commissioner's Decision is limited to determining whether the Decision is "supported by substantial evidence on the record as a whole." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). "Substantial evidence … is more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison*

5

*Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  This "threshold … is not high."  *Id.*  "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quotation omitted).

Remand is warranted, however, when the ALJ's opinion contains insufficient factual findings that, "considered in light of the record as a whole, are insufficient to permit [the] Court to conclude that substantial evidence supports the Commissioner's decision."  *Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008); *see also Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) (remanding because the ALJ's factual findings were insufficient for meaningful appellate review).  At minimum, the ALJ must build a logical bridge between the evidence and the RFC he creates.  He does so by "includ[ing] a narrative discussion describing how the evidence supports each conclusion," and "[t]he [ALJ] must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *See* Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7; *Lee R. v. Kijakazi*, No. CV 20-1989, 2022 WL 673259, at *4 (D. Minn. Mar. 7, 2022) (finding ALJ failed to create a "logical bridge" between the evidence and his conclusions); *Weber v. Colvin*, No. 16-cv-332 (JNE/TNL), 2017 WL 477099, at *26 (D. Minn. Jan. 26, 2019) (same).

**II.   Analysis**

Plaintiff argues remand is required because the ALJ erred when he: (1) determined the state agency psychologists' opinions were only "partially persuasive" (ECF No. 14 at 6); and (2) did not adopt the state agency psychologists' finding that she was limited to "superficial" interactions with others, instead limiting her RFC to "occasional" interactions with others (*id.* at 6-12).  The Commissioner contends the ALJ's RFC finding was even more restrictive than the state agency

6

psychologists' findings and that Plaintiff has failed to prove additional limitations were required, such that no error occurred (ECF No. 19 at 1).

### A. The State Agency Psychologists' Opinions

In reaching his determination of Plaintiff's RFC, the ALJ noted that he could not defer or give any controlling weight to any prior administrative medical findings or opinions. (R. 29.) With respect to the opinions of the state agency psychologists, David Biscardi, Ph.D. (on initial review) (R. 73-75; R. 98-100) and Terry Jorgenson, Psy.D., L.P. (affirming Dr. Biscardi's opinion on reconsideration) (R. 130-32; R. 157-59), the ALJ determined their opinions were only "partially persuasive." (R. 29.) The ALJ observed that the psychologists had assessed Plaintiff's limitations and found: "mild limitation in understanding, remembering or applying information; moderate limitation in interacting with others; moderate limitation in concentrating, persisting, or maintaining pace; and mild limitation in adapting or managing oneself." (R. 29, citing R. 74, 99, 131 and 158.) They further assessed Plaintiff as:

> retaining the capacity to understand, remember, carry out and sustain performance of 1-3 step tasks (but would become overwhelmed if the procedures were more complicated), complete a normal workday, *interact briefly/superficially with coworkers/supervisors* and adapt to changes/stressors associated with simple routine competitive work activities.

(R. 29-30, citing R. 74, 99-100, 131 and 158 (emphasis added).)

The ALJ found the state agency psychologists' opinions to be only "partially persuasive" in that he found Plaintiff's mental functional limitations were more severe than the psychologists assessed them to be. (R. 29.) Specifically, instead of assessing a "mild limitation" in "adapting or managing oneself", the ALJ assessed Plaintiff as having a "moderate limitation" in this functional area. (R. 29.) In addition, upon reviewing the state agency psychologists' determination of Plaintiff's retained mental functional capacity, the ALJ stated, "After

consideration of the overall record, [the ALJ] *further limited* [Plaintiff] as described in the residual functional capacity." (R. 30 (emphasis added).)

While the main focus of Plaintiff's argument, as discussed below, is that the ALJ improperly failed to include a "superficial interaction" restriction in Plaintiff's RFC, she also challenges the ALJ's Decision, in part, on grounds that he failed to properly support his determination that the state agency psychologists' opinions were only "partially persuasive." (*See* ECF No. 14 at 8 (arguing that "[t]he ALJ did not explain why the opinions provided by his own experts were somehow not persuasive.").  The Court disagrees.  In reaching his Decision, the ALJ clearly articulated his rationale for partially rejecting the opinions of the state agency psychologists: that based on his review of the record in totality, he found her limitations in "adapting or managing oneself" to be greater than they assessed, and accordingly imposed additional limitations in her RFC. (R. 29-30.) Plaintiff does not challenge either the ALJ's determination of her RFC with respect to adapting or managing oneself or his determination that the state agency psychologists' opinions were insufficiently restrictive in that regard. Moreover, because these determinations are favorable to Plaintiff, a finding that they are erroneous would not establish grounds for granting Plaintiff's motion. Thus, to the extent Plaintiff challenges the ALJ's evaluation of the state agency psychologists' opinions as only "partially persuasive," she does not establish a basis for remand. The Court accordingly rejects Plaintiff's argument and affirms the ALJ's assessment of the psychologists' opinions.

### B. The RFC Determination

Plaintiff also challenges the ALJ's determination of her RFC. It is the claimant's burden to prove her RFC. *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003) (citing *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)); *accord Charles v. Barnhart*, 375 F.3d 777, 782 n.5 (8th Cir. 2004). The ALJ bears primary responsibility for assessing a claimant's RFC based on all relevant

evidence, including medical records, observations of treating physicians and others, and a claimant's own descriptions of the claimant's limitations. *See* 20 C.F.R. § 404.1545(a)(3); *see also*, *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016); *Roberts v. Apfel*, 222 F.3d, 466, 469 (8th Cir. 2000). "Because a claimant's RFC is a medical question, an ALJ's assessment must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley*, 829 F.3d at 932 (quoting *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007)). The "ALJ is not limited to considering medical evidence, but is required to consider at least some supporting evidence from a professional." *Baldwin*, 349 F.3d at 556. The ALJ must determine the claimant's RFC based on all of the relevant medical and non-medical evidence. *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016); 20 C.F.R. § 404.1545(a)(3). An ALJ's RFC determination is acceptable if it is supported by at least some medical evidence based on the ALJ's independent review of the record. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1024 (8th Cir. 2002).

Plaintiff's primary challenge to the ALJ's Decision is that he failed to adopt the state agency psychologists' opinions that she could interact with others only "superficially" and did not explain that omission from her RFC. (ECF No. 14 at 6.) Instead, the RFC restricts Plaintiff to "occasional interaction with co-workers and supervisors." (R. 24.) Plaintiff argues the terms "superficial" and "occasional" are not interchangeable. While an "occasional" limitation restricts the *quantity* of time spent with others, a "superficial" limitation restricts the *quality* of the interaction. (*See* ECF No. 14 at 9-10, collecting cases and quoting *Midlam v. Berryhill*, 2018 WL 2932134, at *2, No. C17-5650 (W.D. Wash. June 12, 2018) ("Occasional contact measures the frequency with which one comes into contact with another. It does not measure depth of contact, meaning whether the contact is superficial or not.").) Plaintiff contends the only possible reading of the ALJ's Decision is that he erroneously "substituted the term 'occasional' for 'superficial' without due explanation" (*id.* at 8), and argues this error was not harmless because it caused the

hypotheticals posed to the VE to be inaccurate and thus tainted the ALJ's ultimate conclusion that Plaintiff is not disabled (*id.* at 11-12).

As a threshold matter, the Court finds Plaintiff's interpretation of the *law* is correct. This Court has previously discussed the terms "occasional" and "superficial" interaction at length and held them to be materially distinct. *See Kenneth J.V. v. Kijakazi*, WL 2394397, *10, Case No. 22-cv-373, 2023 (KMM/DJF) (D. Minn. Jan. 27, 2023), *report and recommendation adopted,* 2023 WL 2388696 (D. Minn. Mar. 7, 2023). To the extent Plaintiff argues the term "occasional" describes the frequency of interactions with others; while "superficial" describes the quality and depth of interactions, the Court agrees. This conclusion is well-supported by case precedent. *See, e.g., Troy L.M. v. Kijakazi*, 2022 WL 4540107, at *14-15, No. 22-cv-119 (TNL) (D. Minn. Sept. 28, 2022) (collecting cases); *Sanders v. Astrue*, 2012 WL 1657922, at *12, No. 11-cv-1356 (JNE/JJG) (D. Minn. April 17, 2012), *report and recommendation adopted in relevant part*, 2012 WL 1658988 (D. Minn. May 11, 2012); *Eden v. Comm'r of Soc. Sec.*, 2019 WL 7666532, at *2, 18-cv-0076 (N.D. Ia. June 6, 2019); *Redd v. Comm'r of Soc. Sec.*, 2021 WL 1960763, at *4, 20-cv-2022 (W.D. Mich. May 17, 2021); *Wood v. Comm'r of Soc. Sec.*, 2019 WL 1614591, at *3, 18-cv-76 (S.D. Ohio Apr. 16, 2019), *report and recommendation adopted*, 2019 WL 1958663 (May 2, 2019); *Hurley v. Berryhill*, 2019 WL 1614591, at *4, 17-cv-421 (N.D. Ia. Sept. 5, 2018).

But that is where the Court's agreement with Plaintiff's position ends. While Plaintiff correctly cites applicable case law recognizing that a "superficial interaction" restriction imposes limits that are materially different in character from those imposed under an "occasional interaction" restriction, Plaintiff's application of the law to the facts of this case ignores the restrictions the ALJ actually imposed in determining her RFC.

Plaintiff's contention that the ALJ simply substituted "occasional" for "superficial" is

inconsistent with the record. The ALJ's RFC determination not only restricted Plaintiff to "occasional interaction with co-workers and supervisors" but also: (1) "no transactional interaction with the public, i.e., sales, negotiation, customer service, or resolution of disputes"; (2) "the work itself should deal with things rather than people throughout a typical workday"; and (3) "there should be no tandem tasks or teamwork required." (R. 24.) These restrictions do not simply limit the *frequency* of Plaintiff's interactions with others; they limit the *quality* of those interactions as well. Though the ALJ did not use the term "superficial," by eliminating contact with the public, focusing the job on work with "things rather than people" and eliminating the possibility of "tandem tasks or teamwork", the ALJ described a position that involves only superficial interactions with others.

Plaintiff's argument appears to rest on the supposition that the ALJ was required to parrot the precise terminology used by the state agency psychologists when he determined her RFC and posed hypothetical questions to the VE. The law is not so confining, however. *See, e.g., Sanders*, 2012 WL 1657922, at *12 (rejecting argument that ALJ erred in substituting the term "infrequent" for "occasional"); *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) ("While the hypothetical question must set forth all the claimant's impairments, it need not use specific diagnostic or symptomatic terms where other descriptive terms can adequately define the claimant's impairments.") This does not mean the terminology an ALJ uses is unimportant. An ALJ's decision must use terms that meaningfully convey all the limits logically flowing from his analysis. In *Kenneth J.V.*, the Court held the ALJ's RFC restriction to interactions with supervisors and co-workers "up to an occasional basis" and "should not have any customer service interaction with the public" failed to encapsulate a limitation to "superficial" contact with others that the ALJ had found persuasive. *Kenneth J.V.*, 2023 WL at *6. But in this case, in contrast with *Kenneth*

11

*J.V.*, Plaintiff's RFC additionally restricted Plaintiff to work with things and not people and further eliminated the possibility of tandem tasks or teamwork.

Plaintiff further contends that although the ALJ's RFC determination may have limited her interactions with coworkers and the public, "[t]here was no limitation, aside from occasional, that directly applied to supervisors." (ECF No. 20 at 3.) This argument simply misreads the ALJ's RFC determination, which in no way distinguishes between coworkers and supervisors with respect to the restrictions imposed. (*See* R. 24.) Because Plaintiff's RFC substantively restricted her to superficial interactions with others, the ALJ created a logical bridge from which the Court can trace the ALJ's analysis. The ALJ's omission of the term "superficial" from her RFC thus did not render the Decision erroneous on grounds that it fails to permit meaningful review on appeal.

This leaves the question of whether the ALJ's RFC determination is supported by substantial evidence in the record. *McKinney*, 228 F.3d at 863. In assessing the severity of Plaintiff's mental health limitations, the ALJ concluded:

> In interacting with others, the claimant has a moderate limitation. The claimant has reported that her anxiety makes dealing with people difficult. She also reported that she visits with her family in person and on the phone, but that she does not have any places that she goes on a regular basis. The mental status exam observations by providers consistently describe a cooperative attitude. The therapy progress notes, however, reflect that the claimant has experienced some difficulty in maintaining boundaries in her relationship with her boyfriend. Overall, the claimant is moderately limited in this area of functioning.

(R. 23, citations to the record omitted.)

The ALJ determined Plaintiff's RFC in light of his conclusion that her functional limitation in this area is "moderate" (R. 29). *See* 20 C.F.R. § 404.1520a(c)(4) (establishing a five-point scale for rating mental impairments: "None, mild, moderate, marked, and extreme"). Plaintiff does not challenge this severity assessment. The ALJ further based Plaintiff's RFC on a comprehensive review of her mental health treatment record. (*See, e.g.,* R. 27, noting that on examination in

April 2019, Plaintiff exhibited "normal and intermittent eye contact, disheveled appearance, normal speech, cooperative attitude, normal mood and appropriate affect, logical thought content, no suicidal or homicidal ideation, and focused attention span/concentration"; R. 28, noting that in early 2020 Plaintiff was overwhelmed with physical problems and had problems with "concentration and motivation," but improved in May 2020 "due to having some consistency and more social support"; R. 28, noting that in a July 2020 exam she exhibited "normal eye contact, well groomed appearance, normal speech, cooperative attitude, normal mood and appropriate affect, logical thought content, goal directed thought process, intact insight/judgment, intact recent and remote memory, and focused attention span/concentration", while in August 2020 her symptoms of depression and anxiety "lessened when she was a bit more active"; R. 28, noting that in September 2020, Plaintiff enrolled in ARMHS (Adult Rehabilitative Mental Health Services), but that the services were terminated in February 2021 due to "no contact" with Plaintiff; R. 29, noting that, other than prescribed medication for depression and counseling sessions, Plaintiff has not received more intensive mental health treatment.)

Having carefully reviewed the record and the ALJ's detailed analysis, the Court concludes the ALJ's determination of Plaintiff's RFC is supported by substantial evidence. Because the ALJ properly considered the record as a whole and substantial evidence supports the ALJ's findings related to Plaintiff's RFC, the Court affirms it. *Perks*, 687 F.3d at 1091.

## CONCLUSION

The ALJ's Decision sufficiently documented his evaluation of the state agency psychologists' opinions and the rationale for his RFC determination, and his conclusions are supported by substantial evidence in the record. The Court accordingly recommends that the Commissioner's findings be affirmed and Plaintiff's motion for summary judgment be denied.

## REPORT AND RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS RECOMMENDED** that:

1. Plaintiff's Motion for Summary Judgment (ECF No. [13]) be **DENIED**; and

2. This matter be **DISMISSED WITH PREJUDICE**.


Dated: October 17, 2023
                                                *s/ Dulce J. Foster*
                                                DULCE J. FOSTER
                                                United States Magistrate Judge

### NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).